We'll hear argument first this morning in Case 11-10362, Millbrook v. United States. Mr. Paoletti, for the letter. Mr. Chief Justice, and may it please the Court. The plain language of Section 2680H's law enforcement proviso waives sovereign immunity in clear, precise, and unambiguous terms. It extends the waiver to any claim for one of the six enumerated torts committed by a Federal investigative or law enforcement officer acting within the scope of his or her employment. And it defines investigative or law enforcement officer as any officer of the United States who is, quote, empowered by law, unquote, to carry out searches, seizures, or arrests. Ginsburg. Would that include, say, a meat inspector? There's a wide range of Federal employees that have arrests or search or seizure. Well, the proviso doesn't say any employee of the United States who is authorized to carry out a search, seizure, or arrest. It used the term any officer of the United States. And I believe that the term officer carries some water here. If we look at a spectrum of individuals who have powers, for example, to carry out searches, we can envision on the one hand very traditional core law enforcement officers. Let's take a DEA officer who can carry out arrests, do searches and seizures, is authorized to use force. At the other end of the spectrum, we have something like a meat inspector or an OSHA inspector who may have a limited ability to carry out searches, but these are searches that are in really a law enforcement capacity, an administrative capacity as opposed to a core law enforcement capacity. So the government raises the argument, and we think it's a plausible interpretation, that by using the term officer rather than any employee of the United States, that there was some limiting factor imported into the statute there by the statute's plain language. And I would trust my colleague from the Solicitor General's office to map the boundaries of that. I would say that in any case, a correctional officer, who are the individuals who are involved here in committing the Complaint of Acts, certainly falls much closer to core law enforcement on that spectrum than to the administrative side. Kennedy, as a general matter, first in the States and then in the Federal government, is a correctional officer, prison guard, usually deemed to be a peace officer? You know? Yes. In many States that use the term peace officer in the statutes defining a peace officer for things, for example, authorizing the use of force or authorizing the carriage of weapons, many States, it's not uniform, but many States include correctional officers within that ambit. The Federal government typically does not use the term peace officer in its statutes, but if you look at Federal statutes that use the term law enforcement officer, which is the very term that's used in subsection H, many, many of those other statutory schemes expressly include correctional officers. So, for example, for purposes of civil service pay, for purposes of death benefits, of retirement benefits. Scalia. Well, that doesn't prove that there are officers. I mean, that's not the test for an officer, how much you're paid. The test is whether you exercise significant authority under the laws of the United States. That's a pretty fuzzy line, but I'm not sure that a prison guard exercises significant authority under the laws of the United States. I would think in the context of the prison, it's hard to imagine how a prison guard could exercise any more authority than they do. In addition to their correctional function, prison correctional officers are essentially the police force for the prison. They are charged with maintaining order and they're charged with enforcing the laws of the United States within the confines of the prison. And indeed, in some specified cases, outside the prison walls. For example, they're explicitly authorized under Section 3050 of Title 18 of the U.S. Code not just to carry out arrests in prison for violations of the Federal law, both by visitors and by prisoners, but to carry out arrests outside the prison walls to prevent prisoner escapes or to prevent assaults on other law enforcement officers. So there's quite expressly an arrest authority granted to correctional officers. In addition, they have the power to search for contraband, both in the context of visitors to prison and the prisoners themselves. Sotomayor, you've argued something slightly different than I took from your briefs. Earlier, in response, I think, to Justice Ginsburg, you were hewing closer to the Solicitor General's position that this has to be limited in some way, and you said you'll let them establish the boundaries. I don't want to let them establish the boundaries. I want you to tell me, is it criminal law enforcement agents? Is it law enforcement agents with acting, as the Ninth Circuit says, acting within a law enforcement activity? Because I'm finding it hard to figure out why we shouldn't permit tort liability on an OSHA inspector who, in inspecting whatever he or she is inspecting, punches someone or does some intentional assaultive act, why they should be punished and why they shouldn't be permitted to do that, assuming it falls within the definition of a law enforcement activity. Justice Sotomayor, let me begin answering that question by making a distinction, which I think is an important distinction here, between the definition of status and the definition of the conduct that's implied here, because I think this is a crucial difference between the amicus's argument on one hand and the Solicitor General's office on the other hand. The amicus would limit the type of conduct that's covered by the statute. They would limit it to actions that occur in a law enforcement capacity. So I'm not sure exactly what that means. I think it's a concept passed along with this concept. Sotomayor, I think they're saying is arrest, search and seizure and whatever the third was. Or some other similar activities, which, again, I'm not sure of the context. Sotomayor, but let's define it more broadly. Let's assume I was willing to define it to include. All of the activities that a law enforcement agent would engage in, including protective services, security services like your officers. Let's assume that we defined it more broadly. What's the problem with their position? The problem with their position is with amicus's position? Yes, with amicus's or the government's, meaning instead of limiting it to criminal activity, limit it to law enforcement activities, broadly defined. The problem with amicus's requirement is it has no textual basis in the statute. The statute very precisely defines it. Scalia, I'll give you a textual basis. Why is it, if all the statute is concerned about is the status of being a law enforcement officer, why is it that the exception it makes does not eliminate the exemption for libel, slander, misrepresentation, deceit, or interference with contract rights? There is accepted from the provisions of the Tort Claims Act any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abusive process, libel, slander, misrepresentation, deceit, or interference with contract rights. However, for purposes of this exemption from the exemption, exception from the exemption, they leave out the latter part. Why do they only put in the others? I think the reason they only put in the others is that those are the kind of torts that would be conducted in the course of conducting a, what's the words, investigative or law enforcement activity. The others would not occur. I think that that is a limiting factor that is not just implicit, but explicit in the statutory text. Yes, but it's a limiting factor that shows, that displays an intent to limit the activities of investigative or law enforcement officers to those activities conducted in the course of investigating or enforcing the law. Well, the fact that Congress was so explicit about categorizing precisely the kind of torts that are covered here, that sort of content, and the fact that Congress was so precise about cross-referencing Section 1346B, which incorporates the scope of employment requirement, suggests to me that when Congress wanted to confine the capacity in which the acts occurred, it could do so, and it in fact did do so. Why would it leave out those other ones? That's what I'm asking you. What possible reason is there to leave out libel, slander, misrepresentation, deceit, or interference with contract rights? That was a policy judgment that Congress made, that it was not. Scalia, I didn't deny that it's the judgment. What reason could there be for that judgment? That it didn't think that those sorts of torts in this context, and I think we all agree, this is a law enforcement-oriented provision. It's called the law enforcement profiling. I give you a reason. The reason they left it out is that they don't think those torts would be committed in the course of investigating or enforcing the law. I think that's right, Your Honor, but that doesn't mean that from that we ought to draw an entirely extra-textual, additional limitation that goes beyond the specific line that Congress did in fact draw. Ginsburg. Which is your view is that the limitation is scope of employment. That's right. The scope of employment is it, and you don't add on anything else to that. You don't add arrest, search, and seizure. But does this whole issue have an academic flavor? Because how in the world could the conduct involved in this case qualify as within the scope of employment? First of all, Your Honor, I think that the question of scope of employment was something that was conceded below. It was never litigated. It was never briefed before the Respondent's brief. And from my reading of the question presented as this Court formulated it, it was excluded from the question presented. So I don't think this Court needs to address it. It's more properly addressed on remand if it's important. But here, I think that there is an argument that this is within the scope of employment. And if you look at cases, for example, the Mary M. case out of the California Supreme Court, there the California Supreme Court held that a sexual assault by a law enforcement officer of an individual who was subject to that officer's authority could be held to be within the scope of employment, because an officer is vested with authority and it is reasonably foreseeable that that authority can sometimes be abused if it happens when the officer is in uniform, on duty, on job hours, dealing with someone who that individual is authorized to use appropriate force against. And even in Pennsylvania, you see cases where people do outrageous things, like a private detective shooting a picketing protester, where the Pennsylvania courts have held that that's within the scope of employment. It's a complicated issue. It's an issue of State law and it will be different in every State, which is why I'd suggest it's more appropriate for this to be handled on remand rather than have a ruling by this Court on a narrow issue of Pennsylvania State law. But I think it's hardly implausible that Pennsylvania courts would find this within the scope of employment. Your Honor, if there's no further questions, I'll reserve the remainder of my time. Roberts. Thank you, counsel. Mr. Yang. Mr. Chief Justice, and may it please the Court. The text and structure of the law enforcement proviso in the Federal Tort Claims Act, more generally, make clear that the proviso unambiguously waives sovereign immunity for claims arising out of the six intentional torts listed for acts or omissions of persons qualifying as Federal law enforcement officers while acting within their scope of employment. Nothing in the statute supports amicus's additional limit, which would require such officers to be acting in a law enforcement capacity or by exercising law enforcement authority, neither of which phrase occurs within the statute itself. Quite the contrary. What are the kinds of things, Mr. Yang, that would be within the scope of employment but would not be acting in a law enforcement capacity for a law enforcement officer? What's the difference between those two standards for a law enforcement officer? Well, this is complicated by the fact that for the Federal Tort Claims Act, scope of employment is a question that turns on State law. As a result, it will vary. Some States have a rather broad understanding of scope of employment and sometimes, in fact, will encompass within the scope of employment rather egregious intentional torts. It's not necessarily what the Court might think of as within the scope of one's Federal law enforcement authority. So with respect to law enforcement authority, I mean, this — that makes the question a little more difficult, because that is not something that actually appears in the statute. And it's not something that the United States embraces as a test, because it is a creation of the amicus. What the statute here does, the only term, the only place that it uses law enforcement is in the defined term, investigative or law enforcement officer. And then what it does is, in defining that term … But you can't give me just a couple of examples of how the difference would matter, you know, in some States, where something would be — would meet the scope of employment test but not meet the acting as a law enforcement officer test for a law enforcement officer. Well, again, acting as a law enforcement officer test is not something that appears in the statute, and it's not something that even amicus has tried to met the limitations of. It could mean various things.  It could mean making evidence or making an arrest. That would be the pooler type of rationale. It could be something incident to that, writing a report, as amicus suggests. It could be other things. Law enforcement officers often aren't doing the very things that we're talking about. They go on patrol. They talk to kids in schools. There are all types of things that law enforcement officers might do that don't fall within what might think — one might think of as, you know, what you see on television when officers are making contact with the public in rather high-stakes incidents. So it's difficult, both because we have a State law term that varies and a term that doesn't even appear in statute and that we don't embrace. So, again, it's difficult to provide examples in any definitive way because both of the comparators shift depending on what we're talking about. Ginsburg. Mr. Young, even if — it depends on State law, that's clear. But does the United States sometimes concede scope of authority so it can represent — it can be the sole defendant in the case, the individual officer is off the hook so that the United States could make the argument, it never happens? The officer didn't do what the plaintiff charged. Young, I believe, if I understand your question correctly, the answer is yes, but let me qualify that. This came up in a case called Osborne v. Haley. And the question about scope of employment for purposes of the Westfall Act turns on whether at the time of the alleged incident the officer or employee in many cases was acting within the scope of his or her employment. Now, when the United States investigates, this is authority that's delegated to the Attorney General, which is in turn re-delegated to the U.S. Attorney's offices, investigates the relevant circumstances and determines that the allegations are just false, not correct at all. In fact, it never happened. The employee was sitting at his or her desk beavering away at important Federal matters. In that instance, the government will say that the employee was in fact acting within the scope of his or her employment and can explain that the reason for that is the government rejects the underlying factual assertion. That's something that then is litigated if the plaintiff seeks to challenge the scope determination. And the Court's decision in Osborne explains that this is how the situation will be challenged to the scope certification of the Attorney General. So, no, we don't simply say they were within scope for no reason. We determine whether they were within scope by evaluating the circumstances at issue, and if the alleged circumstances did not occur and the employee was acting within scope properly, we will certify that the employee was acting within the scope. Sotomayor, could you go back and tell me yet again, you give a limiting principle, but I'm not sure how it applies. You seem to be saying, and do you agree with your, with the Petitioner, that law enforcement officer includes correction officers? It does. And why? Because they have all of those other powers, so how is that different from those in the civil area who have similar powers to arrest, search and seize, to? Well, I guess there's two elements to the definition of investigative or law enforcement officer within the statute. First, they have to be an officer of the United States. And the term officer, when we're talking about Federal officers, the dictionary definition that most commonly, comfortably applies here are one that we're talking about, like sheriffs, constables, bailiffs, people who have normal Federal criminal law enforcement, well, not Federal, but criminal law enforcement responsibilities. That is, you know, when you back out to the second criteria, we think that reinforces. How about customs agents? Customs agents, I don't know if they have criminal. I believe if we assume that they're simply doing a civil function, custom agents would not fall within the term officer as normally applied. And let me give you an example that the amicus raises, Federal forest employees, Forest Service employees. Forest Service employees, the clerks that work in D.C., are not what one would normally think of as an officer, particularly when we're talking about the phrase law enforcement officer. Sotomayor, my problem is park employees, I think, as officers, when you meet them at the parks, they're guarding the parks. Some, some. And they're also be giving tours. They're usually doing sort of a mixture of. Actually, I don't think that's duties. That's correct, Your Honor. The Forest Service, as other park, the Park Service, has different roles for various individuals within their employ. And there are, in fact, law enforcement officers in the Park Service, and there are law enforcement officers in the Forest Service, and their duties are what one would traditionally think of as law enforcement. Scalia, Mr. Yang, the United States didn't take this position below, right? That's correct. This is a change of heart. How long was it that the United States took the opposite position, the position argued by amicus here? Well, this is the or-se position, which is not the Pooler position, I believe the Court's talking about. Pooler, the government has not taken the view that the Third Circuit was correct in Pooler, as far as I can tell, except within the Third Circuit as binding precedent. Now, when we take a step back and abandon Pooler's limited approach and apply a more kind of amorphous law enforcement capacity, law enforcement authority, the government has done that in a number of lower court cases, including several courts of appeals. So it couldn't be that obvious, I guess, right? Well, I think in those cases, the government took a position that never was positioned that made it to the Solicitor General's office. And when we took this, both in the Reynolds case, when there was an adverse decision to the United States, and in this case, we determined that the position was not one that could be, was not correct under the text. And I think as amicus is, amicus does, I think, a valiant job of trying to defend that position, but at the end of the day, there simply is not a textual argument to get to that outcome. And that's why I think it is true there's a strong textual argument for your position. But let me ask this. Are there any studies or any statistics we can look at to see, as a predictive matter, how many prison suits against the government this ruling that you propose would cause? It seems to me there are close to 200,000 Federal prisoners, I think. And this prison work, there's a lot of shoving. The guards have to break up fights. So there are going to be any number of instances where the question is, did the guard overreach? And if I make the assumption, and it's just an assumption because I haven't looked at any statistics, that this is going to vastly expand the number of cases in which the government is the defendant, doesn't that bear on the likelihood of the congressional intent to adopt your position? I guess there's a few parts to that question. On the statistics, I'm not aware of any statistics that we would be able to reliably extrapolate to see what this would mean. I think there may well be some additional cases. However, there are other tools, as we explained in our reply brief, including the Prison Litigation Reform Act, which requires that prisoners both pay their filing fees, and if they obtain three strikes, must in fact, they lose IFP status, and must pay that filing fee in advance, and it's a substantial amount of money for many prisoners, given what they earn. So we think that it's not a reason to ignore what we think is the plain text, particularly where Congress here has, in the proviso, specifically referenced Section 1346B. Section 1346B makes clear that the waiver of sovereign immunity applies to acts or omissions committed within the scope of the law. Can you suggest why Congress might have left out libel, slander, misrepresentation? Yes, I think so. Why would they leave that out, if they're only looking at the office and not at the function that the person is performing? Well, I think that those torts serve as a rough approximation of what Congress anticipated would be the areas where it thought the United States should be liable when we're talking about Federal law enforcement officers. And I think, in fact, those torts are not. Scalia, I mean, that's the point. So what you're saying is that it suggests that they mean Federal law enforcement officers engaged in law enforcement. Well, not — I don't know that that's the case, Justice Scalia. Certainly, there is some correlation between those torts and how we should, for instance, understand officer of the United States. Things like false imprisonment, false arrest, malicious prosecution all evoke Federal criminal law enforcement ideas. However, when we look at the text that Congress used to implement the statute, the text is not like any of the other instances within the Federal Tort Claims Act where Congress has limited the waiver to particular types of activities or carved out certain activities. In fact, what Congress did was reference back to the general waiver provision, which explains that it — the waiver applies to acts within the scope of employment. If Congress had wanted, for instance, to say only within law enforcement capacity, it would have used very different language, the language of Sections — other provisions in Sections 2680, for instance, Section A, B, and C, which limit — which carve out the execution of a statute or regulation, exercise of discretionary functions, the loss, miscarriage, or negligent transmission of postal matter, assessment or collection of taxes or customs duties, F specifically direct — carves out the imposition or establishment of a quarantine, J carves out the combatant activities of military forces. If Congress wanted to use similar language, like law enforcement activities of a law enforcement officer, it would have done that. And, you know, the United States, we don't want to bang the drums too loudly here. We did take a contrary position previously, but when our office reviewed the case, we simply determined that the position could not be one that would — Sotomayor Let's assume we adopted the definition Justice Scalia just proposed. Law enforcement officer engaged in law enforcement activities. Would correction officers be engaged in law enforcement activities? Well, yes, maybe. Sotomayor It's a hard question. I mean, the definition of a correction officer is an undefined term, and a term does not even appear in the statute. Sotomayor Well, you can look at it both ways. Are correction officers, as officers who are protecting or securing prisoners, are they acting in a law enforcement capacity? Forget about what tort they commit, but do they function? There could be many answers to that question. Sotomayor Okay. You could, as the amicus — or as Petitioner suggests, say that the enforcement of a criminal sentence is part of law enforcement capacity, so anything that they do is law enforcement. You could think of law enforcement capacity as more like arrests, you know, searches for violations of Federal criminal law and that sort of thing. Those might be exercises that the Court would have to engage in if Congress had actually used text directing the Court to look at that. Roberts Thank you, counsel. Thank you. Mr. Buchholz. Mr. Chief Justice, and may it please the Court, I hope to convince the Court of two things today. The first is that our reading of the law enforcement proviso is limited to conduct of investigative or law enforcement officers acting as such. The first is that that reading is textually plausible. It is a reasonable reading of what Congress enacted in light of the structure of the statute and in light of ordinary English. Ginsburg May I ask, in light of your opening statement, are you then abandoning your position that it must be either arrest, search or seizure? You have used the Ninth Circuit formula. Buchholz Well, Justice Ginsburg, it's not really clear how different the Ninth Circuit and the Third Circuit are from each other, because there haven't been cases that have arisen that have really tested the proposition that the Third Circuit meant only, literally only, the execution of a search, the seizure of evidence or the making of an arrest, and that would exclude conduct very closely incident to one of those things. Those cases just haven't arisen. So the courts have used different formulations. They appear to mean slightly different things by them. But I wouldn't want to exaggerate the differences between the Third Circuit and the Ninth Circuit. Both are trying to capture what Congress was getting at here, which was the law enforcement proviso was about law enforcement activity. It was about covering the United States under the FTCA for abuses of law enforcement authority like had occurred in Collinsville, which was the national scandal that prompted the enactment of the proviso. So I think the answer to your question, Justice Ginsburg, to your question is we think that if you take the Third Circuit's language in Pooler, which of course is not this case, but if you take the Pooler language literally and you say that the only conduct covered is conduct in the course of, that's language the Court used a few times in the seizure of evidence, that's problematic, because it's clear that Congress was trying to cover abuses of law enforcement authority, including malicious prosecution and abusive process, which we know because Congress included those torts in the exception to the exception. And if you had a situation where an officer conducted a search and then wrote a false report about the search that he had conducted, the writing of the report wouldn't literally be in the course of the search. And so if you take those words in Pooler literally, that would be excluded. That can't be right. So to that extent, we agree with the Ninth Circuit position rather than the Third Circuit position. But again, I'm not really sure that I'm — that it's fair to attribute that extreme position to the Third Circuit. But the statute itself has a kind of conduct-based limitation in it. It says law enforcement officers acting within the scope of their employment. So I guess my question is, given that there is that conduct-based limitation in the statute, why one would substitute for it law enforcement officers acting as law enforcement officers? Why wouldn't one use just the conduct-based limitation that's already there? Justice Kagan, I don't think it's a substitution. I think it's an addition, if it's anything. But really the reason is that under ordinary English usage, when there's a reference to somebody by — defined by their status, it's fair to assume that the reference to the person defined by their status is really just intended to cover things they do in that relevant status and not things they do in some other capacity. What we're asking the Court to do here is exactly what the Court did in Lane v. Pena. In Lane v. Pena, the statute at issue is the Rehabilitation Act. It waived sovereign immunity and provided a damages remedy against Federal providers of funding. The Department of Transportation clearly was a Federal provider of funding. It gave out all sorts of funding to all sorts of recipients. But that's not what the case was about. The case was about the Merchant Marine Academy and somebody who was dismissed from it. And what the Court said is the reference to Federal funding providers, like the Department of Transportation, had to be read as limited to Federal funding providers acting as such. Those were the Court's words, acting as such. Kennedy, and then take that theory and track through the statute to show me how that theory works, which is what your opening argument was going to do. Justice Kennedy, in the first sentence of the proviso, the operative provision, Congress referred to acts or omissions of investigative or law enforcement officers of the United States. Congress didn't say any acts or omissions of investigative or law enforcement officers were covered. It didn't say all were covered. It just said acts or omissions of law enforcement officers, in the same way that the statute at issue in Lane referred to conduct of a Federal funding provider. And so what this Court should do, we submit, is construe acts or omissions of investigative or law enforcement officers of the United States as limited to acts or omissions of those defined, that defined class of persons in the relevant capacity when they are acting as law enforcement officers. But again, it's not just any acts of law enforcement officers. It's acts of law enforcement officers acting within the scope of their authority. And now you're saying acting as a law enforcement officer. I mean, one question I suppose I have, which is the same question I gave to Mr. Yang, is what's the difference between those two things? And I guess the second question is, why would we substitute one phrase about how they have to be acting for the phrase that Congress actually used? Congress didn't in the proviso, Justice Kagan, Congress did not actually use the phrase scope of employment. It did not actually incorporate scope of employment as a limitation explicitly in the proviso. It incorporated 1346b, which contains the scope requirement, but the proviso of Congress did not actually speak in terms of scope of employment as the operative limitation. So I don't think we'd be substituting the acting as such limitation for anything that actually appears in the proviso. Ginsburg. Is it a limitation? Is scope a limitation? I thought that you didn't question that, that scope is a limitation on the conduct that's covered, right? Justice Ginsburg, we certainly agree that the conduct that's covered has to be within the scope of the Federal officer's employment. The only point I was trying to make a moment ago in response to Justice Kagan is that requirement exists in 1346, not in the proviso by its terms. We certainly agree with that, and as we've argued in our brief, we think that one way the Court could affirm the judgment below is to hold that the officers here were not acting within the scope of their employment, taking the allegations as true as they have to be at this stage of the case. But to return to Justice Kagan, to your question about why Congress would have wanted to the Court to interpret acts or omissions of law enforcement officers as acting as such, it's because in part the answer is because scope turns on State law. So Congress doesn't know when it enacts the proviso what's going to be covered if the only limitation is scope, because that turns on 50 different States' laws. And I think that it's fair to say that there are actual meaningful differences between different States' laws as to scope, as we point out in our brief. But the other part of the answer is the second part of this Court's analysis in Lane v. Pena, which is it's entirely possible, literally, to read the Rehabilitation Act in Lane, and I would grant that it's possible, literally, to read the words in the proviso as covering everything that a defined law enforcement officer does. But the Court said in Lane, we can't read the statute that way, because we're talking about a waiver of immunity, and waivers of immunity, even if you don't have to put a heavy thumb on the scales, and even if you don't have to require that it be unequivocal, we're not going that far here, you can't interpret it more broadly than there's any reason to think Congress meant. And, Justice Breyer. Breyer, what does it leave out, your theory? A policeman is a law enforcement officer. What does he do on his job that isn't in a law enforcement role? Well, there may be certain types of law enforcement officers, Justice Breyer, who generally are engaged in law enforcement activity when they're within the scope of employment, but that's not the case with respect to correctional officers like are at issue here. And the reason for that is, and other types of officers, which hopefully I'll be able to get to, but correctional officers first, since that's what this case is about. 18 U.S.C. 3050 is what makes correctional officers fall within the second sentence of the proviso, the definition that Congress provided of investigative or law enforcement officers. It's what gives them the authority. So your idea here is a park policeman who is engaged in law enforcement some of the time, but engaged in giving tours the rest of the time. You're saying what you would do is say when he's engaged in the law enforcement, he's covered, but not when he's engaged in the tour. That's right, because he meets the status-based definition that Congress provided. But there's no reason to think Congress intended that he be covered when he's not engaged in law enforcement activity. Sotomayor, what is it about a corrections officer, other than the act that was committed here, which was an alleged sexual act, which nobody could, except by some definition of State law, think that that ever happens naturally in the course. But that's an intentional assault. The very definition of the crimes that are covered assumes that it's not an act that's licensed. So why isn't the correction officer acting in a law enforcement capacity when he's restraining people and securing them? Because the correctional officer essentially has two capacities, 18 U.S.C. 3050, which is the only source of law that anyone has pointed to, to make correctional officers fall within the definition of law enforcement officers in the first place. It has nothing to do with correctional officers' daily interaction with already incarcerated prisoners. It authorizes correctional officers to arrest escaped inmates and to arrest visitors to prisons. It has no application to their daily interaction with prisoners who are searching the prison. Ginsburg. What about the breakdown that occurred here, and I think it's not uncommon? Your definition includes three things, arrest, search, seizure. And correctional officers do engage in searches of cells for contraband, and they do engage in seizures. Those are not — it isn't like arrest, which you point out, that arrest is unusual, it's an escapee or a visitor. But that's not true of search and seizure. Justice Ginsburg, correctional officers do search prisoners' cells on a routine basis as part of their duty to maintain order and security within the prisons. That responsibility comes not from 18 U.S.C. 3050, but from 18 U.S.C. 4001 and following, which is an entirely different set of legal authorities that has to do with the Attorney General's management of the Bureau of Prisons under his supervision and correctional officers and 28 CFR Part 552, which is where the correctional officers get their authority from to search prisoners' cells, et cetera. We think that when correctional officers are engaged in that kind of activity, they're acting in a security capacity to maintain order and security within the prison. They're not acting in their very narrow law enforcement capacity conferred by 18 U.S.C. 3050. Sotomayor says it doesn't have that. Sotomayor what happens in the police precincts when police officers are holding pretrial detainees, are they acting as police officers or as security people? Or even when a prisoner comes back to court for a court appearance, and there are U.S. marshals who guard them rather than correctional officers, what are they serving as in your mind? Well, as I said before, Justice Sotomayor, I think there are certain types of law enforcement officers who generally when they're acting within the scope of employment are engaged in law enforcement activity. And deputy U.S. marshals would probably fall within that. But the important point about this case is it doesn't, Justice Ginsburg, involve an allegation about a search. So whatever the Court might think the right way to look at correctional officers when they're engaged in searches might be, this case isn't about a search. Why isn't this, why isn't what the prison guard does law enforcement? I mean, the law says these people are going to be locked up, and he's enforcing that. The law says they're going to be unprisoned under these da-da-da-da-da. You know, all that da-da-da means the conditions of prison, et cetera. They're all regulations, rules, statutes. He's enforcing it. Why not? Justice Breyer, I think we can tell from the definition in the proviso what Congress was focused on when it, when it referred to law enforcement officers. We can tell what Congress was focused on. Oh, so now you're saying what those three things provide the definition? And, and, and other conduct that, as I said before, is, yes, with the caveat, and I think it's an important one, that, that it's not just those three things, only what occurs in the course of those three things, the way Pooler could possibly be read, but also conduct that's closely incident to those things. Well, no, wait, you don't think the EPA is engaged in law enforcement when it enforces statutes and regulations, do you? Well, it depends on, Justice Scalia, it depends on. Would an officer of the EPA be a law enforcement officer when he writes a letter to a company saying, you know, you're violating section such-and-such of the statute? Is that a law enforcement officer? Well, the person who writes the letter may qualify as a law enforcement officer under the definition, but that's a different question I would submit than whether that, that act constitutes law enforcement activity. I think the answer to that question, Justice Scalia, is probably no, but the important follow-up is, if that person meets the definition of law enforcement officer because he's an EPA agent, and after the letter he follows up and goes to the premises of the recipient of the letter, knocks down the door and conducts an illegal search, that's what Congress was trying to come up with. Yeah, but it's not EPA is not what I'm thinking of. I don't think they are. I'm thinking of policemen, okay? Now, one basic job of a policeman is to patrol, but not arresting people, not searching, and not seizing evidence. They're on patrol. That's basically what they do. All right? Is that a law enforcement activity? If it's an FBI agent? Yeah, yeah, yeah. But I mean, in places, it's Federal, I understand. So I'm sure we can find the analogies in the Federal situation to ordinary policemen. Justice Breyer, the answer, the answer, well, I mean, it might not be so easy to find an analogy to an ordinary policeman in the Federal situation. But FBI agents, who are the Federal police? They're people on Federal enclaves, for example. They're on Federal enclaves. They act like policemen. Okay. Sure. And when they're engaged in patrols, I think it's fair to say that's probably law enforcement activity. Okay. That's a favorable, I mean, what I'm thinking is either you're going to have a broad definition or one that's going to get into trouble when we consider real policemen. So if you have a broad one, then I don't see how prison guards get out of it. If you have a narrow one, my guess is we can find lots of Federal policemen who really are policemen who aren't doing what falls out, who are doing what falls outside your narrow definition. I wish I could think of better examples, but I came up with the ones I did. Well, then maybe I should try to return to some of the examples that other Justices have given. So there was talk earlier about an OSHA inspector. The government's position, I think this is an important difference between our position and the government's. The government would say that because OSHA isn't a criminal law in the traditional sense and an OSHA inspector or an OSHA agent isn't enforcing criminal law in the colloquial sense, that that shouldn't be covered. But if the OSHA inspector knocks down your door and conducts an illegal search and batters you, why shouldn't that be covered? We know that's a law enforcement abuse, and we know that law enforcement abuse is exactly what Congress was trying to get at. The government, it's like it's trying to relitigate Marshall v. Barlows, where this Court held that OSHA inspectors have to have a warrant, even though you could think of OSHA as being administrative or civil as opposed to criminal. That's the argument the government made there, and that was a generation ago. And it's not a law enforcement abuse. Kennedy, the point in this case is that we agree that correctional officers fall within the plain language of the definition that Congress provided. Again, the structure of the proviso is there's two sentences, an operative provision and a definition. We're trying to get the Court to construe the operative provision, the first sentence, in the same way the Court did in Lane v. Painted. The government is trying to get the Court to construe the definition, the second sentence. Where Congress said in the definition what the term means, the Court has much more scope to construe that in some way other than the literal language that Congress provided, where Congress said what the term means. So we agree under the plain language of the definition that correctional officers are investigative or law enforcement officers because of 18 U.S.C. 3050, which gives them the power under limited and inapplicable here circumstances to arrest. We think that if you look at correctional officers under 18 U.S.C. 3050 and under the different authorities under 18 U.S.C. 4001 and following and the regulations, that they wear two hats. Sometimes they act in a law enforcement capacity, but not usually, because that only applies in the narrow context of escapes or visitors. When they're dealing with already incarcerated prisoners, like in the allegations here, they're really not acting in that capacity at all. They're wearing a different hat. Scalia. You're saying that the government is trying to minimize the consequences of coming out its way by providing a definition of the officers covered, which will not hold. You think it does cover a broader category of officers, including OSHA inspectors, but it does not cover them when they're not engaged in law enforcement activities. Justice Scalia, you've absolutely perfectly encapsulated our position. Thank you. And the reason why we think that that difference between our position and the government's is important is the government's position would render the proviso severely underinclusive. We know Congress was trying to get at law enforcement abuses and provide a remedy. And Congress, the government would say that if it's not a traditional law enforcement officer in the colloquial sense of, like, a constable, that it's not covered. But all sorts of agents of the United States, from OSHA to FDA to all sorts of other agencies to EPA, engage in law enforcement activity like the three things we know Congress was focused like a laser beam on, executing searches, seizing evidence, and making arrests for violations of Federal law. And I don't see any basis consistent with the text or our understanding of what Congress intended, to the extent that's different from the text, to say that's not covered. Sotomayor, the one other advantage of your definition is that it takes us out of workplace between two employees, because presumably the officers who punch each other out, if that incident occurs, aren't acting in the law enforcement capacity. I'm assuming that's part of your argument as well. That's part of it. That's right. All right. Then it goes back to the question I asked one of your adversaries, which is all of this depends on how broadly or narrowly we define law enforcement activities. If we take it as broadly as the government is suggesting at moments, it would we could very well say, you're right, it's a law enforcement activity, but not as narrowly as some would have it be. It would include securing or detaining people or securing or detaining people. And it would include the park service person who stops a visitor and punches them out. It would include the military personnel who stops someone and does an intentional tort against them, even though they may just be walking on the grounds rather than serving as security that particular day. So the point is, why should we give it the narrow reading you're giving and not the broad reading you're suggesting? Well, two parts to the answer, Justice Sotomayor. The first is the government is trying to give the first sentence a broader reading, which it recognizes and creates a problem that it tries to solve by narrowing the second sentence in a way that we think won't hold. But the other part of the answer, Justice Sotomayor, is it's about congressional intent. Justice Kennedy asked earlier about whether the government's interpretation or Petitioner's interpretation would unleash a flood of suits by prisoners and whether it's fair to think that Congress would have intended that. If you look at the legislative history of the proviso, there is absolutely no indication that anyone in Congress contemplated that the proviso would or could or should apply in the prison situation. All Congress was focused on was providing a remedy for the kinds of raids that had occurred in Collinsville. And so I think when somebody has two hats, like a prison guard has, because, again, there's two different sources of legal authority that they're exercising, 18 U.S.C.  And the cases like Holian that we describe in our briefs where the government made the argument that where a military policeman is engaged in a military function, not a law enforcement function, that they're not covered, we think where somebody who meets the definition that Congress provided of investigative or law enforcement officer has two distinct hats, two distinct capacities. When they're not acting in the law enforcement one, they're not covered. There's no reason to think Congress intended that military police or prison guards be covered when they're maintaining order on a military base or within a prison. That's not what Congress was trying to get at. And we think, again, that a severe disadvantage of the government's position, they're trying to solve, in a sense, they're trying to solve the same problem that we are with our acting as such interpretation. But they're trying to solve it through the wrong part of the statute and in a way that in a way ends up with the worst of both worlds. You end up with broader coverage of the kind of conduct that's covered, broader than there's any reason to think Congress intended, conduct that doesn't involve law enforcement activity at all, but a narrower class of people whose conduct is covered, where that excludes people like OSHA inspectors, FDA agents, EPA agents. And in the rare circumstance where the Forest Service employee is acting as a law enforcement officer rather than as a botanist or an entomologist or something like that, we think Congress intended to cover them. We know from the definition that there were three exercises of law enforcement authority, that Congress was focused like a laser beam on, executing searches, seizing evidence, and making arrests. Where somebody meets the definition of a law enforcement officer and they're doing one of those three things, there's no basis not to say that they're covered. So we think it's better to interpret the first sentence of the proviso the same way the Court did in Lane v. Pena as limited to acts or omissions of investigative or law enforcement officers acting as such, and keep the definition that Congress provided the way Congress provided it. Ginsburg. Then scope becomes kind of surplusage. Well, not surplusage necessarily, Justice Ginsburg, in that because it varies among States. There could be States where scope is narrower or broader, and there could always be situations where State law is such that the easiest way to resolve a case is under scope and not under the concept of acting as a law enforcement officer. It has to be a law enforcement function. Give me an example of a case where scope would also be relevant, would also be applicable. If there is a law enforcement function, then it fits. So what does scope add? Well, if an officer is executing a search, but he's doing so because of a personal vendetta against the person whose premises he's searching, and he's not acting under whatever the State's law that's applicable, if there's a relatively narrow conception of scope so that you have to be trying to serve your employer, which is the traditional rule, and not just sort of on the job in a loose sense, which is what the D.C. rule has come to be, an officer who's engaged in a search or who is making an arrest for a completely inappropriate reason, not trying to serve the employer, not in any way that's authorized by the employer, might not be within scope, but might be engaged in one of the three law enforcement activities that Congress specified. Kennedy, that seems like an unusual case, but the prisoner is supposed to be back in his cell block at 6 in the evening. He isn't. He's on the recreation yard. He's somewhat recalcitrant, and two guards carry him back to the cell block. Is that an arrest? No, Justice Kennedy. It's not an arrest for, among other reasons, the reason that prison guards don't have any legal authority to make an arrest in that circumstance. The prisoner has already been arrested. That's how he got to jail in the first place. Well, he's violating the prison regulations. Yes. And 28 CFR Part 552 sets out the authorities that prison guards have to enforce prison regulations to maintain security and order within the prison, like in that circumstance. And that's not making an arrest. The prison guards have the authority to use force. And that's not a law enforcement function as contemplated by the statute in your view? That's correct, Justice Kennedy. That may involve the use of force, and, you know, you could make an argument that when you pick somebody up, like in your hypothetical, that that's like an arrest at common law. There's no reason to think Congress was getting at that, was trying to cover that in the proviso. Where somebody has two different distinct capacities as a matter of law, the way Bureau of Prisons guards do, and they're acting in the one and not the other, then I think that's the simple answer, is that it's the difference between the officer who punches the prisoner to get him on the ground and pick him up. Would it apply to the officer who files an arrest complaint against the prisoner and not to the security officer who just merely carries him back to his cell? So Justice Sotomayor, the hypothetical is that the officer's jaw does some physical injury that's substantial. So the intentional assault gets treated as an exception to this only when the security officer actually files an arrest complaint? Or would it at all in that case? Are you talking about a Bureau of Prisons guard filing an arrest complaint? Yes. Well, I think one thing to point out is the government informs the Court in its reply brief that in a situation where there's been a violation of prison rules that may also be a violation of Federal law, that may also be a crime, such that, you know, in ordinary English usage, you could refer to the prison guard as conducting an investigation for violation of a Federal crime. What happens is the BOP guards don't do that themselves. They call in the FBI. That's what the government says in its reply brief. So I think that itself is an indication of the distinction between prison guards who are law enforcement officers, as Congress has defined the term, but who are not traditional law enforcement officers, as the government seeks to define the term, to redefine the term, and in that capacity are not acting as law enforcement officers. Kagan. Mr. Buckles, I'm sure you've done this already, so I apologize, but could you just state your definition of what it means to be acting as a law enforcement officer? What activities, other than the three listed, get included? Buckles, Well, Justice Kagan, it's hard to give a simple comprehensive answer that applies to all different types of law enforcement officers. Let me start by saying that the three things that have to be included are the three things Congress specified, and that's one of the problems with the government's definition is it reads out cases involving those three activities, involving the government to be the wrong type of officer. Kagan So what else cuts in the mix? How would you define it generally? Buckles, So in a case that involves one of those three things, but also something else that's incident to or related to those three things, we think it would probably be artificial. I mean, you can imagine all sorts of hypos, but it might well be artificial to separate the writing of the report about the arrest from the arrest itself. And so conduct incident to one of those three specified activities, we think, is probably covered. We also think that maybe when you're talking about a type of law enforcement officer, like an FBI agent who is wearing his law enforcement hat all the time and doesn't have a second distinct capacity as a matter of law, like a military policeman or a correctional officer, that maybe a broader definition is appropriate, and that maybe the FBI agent who is in. Kagan Maybe? I mean, yes or no, or when, or? Buckles, Well, I mean, Justice Kagan, in fairness, this case doesn't present that question, because it doesn't involve any law enforcement activity at all. Kagan But if we're going to adopt your definition, we have to have some understanding of where it's taking us. Buckles, Of course, of course. And where I think it would be taking the Court is that, as always, there could be hard cases that could arise that the lower courts would have to grapple with. But I think the important concept is that where somebody has two hats, a law enforcement capacity and some other capacity, then it's easy to draw that line in concept. Again, there could be hard cases, but as a concept, it's easy to draw that line. Where somebody doesn't have two hats, they only have one hat, like an FBI agent, and they're on the job and they're engaged in what normal people would think of as a law enforcement activity. Maybe that's covered. I don't really have a problem with that. I think that's probably consistent with what Congress was getting at. And maybe the way to think about it is, Congress defined law enforcement officer with reference to the three specified kinds of exercises of law enforcement authority, but when the FBI agent is interviewing a witness or a potential suspect but hasn't yet gotten to the point of arresting the person or conducting a search, you could think of that as preliminary to an exercise of one of the three specified authorities, because, after all, that's what the FBI agent has the authority to do. It's what his job entails, and depending on how the initial questioning goes, that might be the next step. And so it's never far from the scene when an FBI agent is engaged in what you would normally think of as law enforcement activity, that one of the three specified law enforcement activities could be in the offing. That's very different when you're talking about Forest Service employees who technically meet the definition, but who usually aren't doing anything within a million miles of what normal people would think of as law enforcement activity. So I think it's important to distinguish between different kinds of people who fall within the definition. And I understand the Court wants to try to figure out what the implications of this interpretation would be. I think that in the prison context, the answer is clear, because there are two distinct capacities, and that's a hugely important context as a practical matter, given the point Justice Kennedy made about the likelihood of an enormous number of claims that Congress probably didn't intend. In the military police context, where there also were two distinct capacities, it's probably pretty easy to draw the line. In other cases, it will be case by case whether something that the plaintiff alleges should be thought of as law enforcement activity or a law enforcement officer acting as such. We don't have a problem with the broad interpretation of law enforcement activity acting as such, dealing with a traditional law enforcement officer in a context that it's clear Congress intended. Roberts. Thank you, counsel. Thank you very much, Your Honors. Mr. Parolel, you have three minutes remaining. Thank you, Mr. Chief Justice. Let me begin by addressing Justice Kennedy's point, his question regarding the possibility of a flood of lawsuits from prisoners. I think it's important to keep in mind that right now Pooler and Orsay are the minority rules. Most Federal courts have adopted a broad interpretation of the law enforcement proviso. So if adopting a broad interpretation here would open the floodgates, the floodgates are already open, and they have been for 40 years in most of the country. And we haven't seen a flood of FTCA suits brought by prisoners, especially since the passage of the PLO Act. Have they also adopted the government's view of what counts as an officer, or have they not? I don't think that the issue has really been litigated in the Federal courts. It simply hasn't come up. And I think that that's an indication that it's a workable test. It's not something that there are many, many cases, the vast majority of cases, involve individuals who will be by any reasonable definition core law enforcement officers. As far as I'm aware, every Federal court to address the issue has defined correctional officers as law enforcement officers, you know, as officers, as that term is used. So I think that these things are really ultimately noncontroversial. Scalia, you support the government's position on who's an officer, right, so it wouldn't include EPA. Is that it? I think that the word officer carries some water in this statute, and it means something other than employee. Is that a yes or a no? Yes. Justice Scalia, let me return to your earlier point about inferring congressional intent from, for example, the list of enumerated torts. And I think it's important to keep in mind that the best evidence of Congress's intent is the text of the statute. And the fundamental problem with Amicus's position is that he very ably uses tools for construing ambiguous statutes to construe a statute that at its core is not ambiguous. It's precise and it's definite. Now, the coverage that's created by the literal words of the statute may be debatable as a policy matter. Maybe it makes sense to include correctional officers, maybe it doesn't. But it's not absurd, and this Court's rule is when you're construing a nonambiguous statute, Congress gets to draw that policy line, not the Court, as long as the result is not absurd. And we would argue that Congress drew that policy line here. It very specifically provided that any claim based on enumerated tort by a Federal law enforcement officer acting within the scope of his or her employment is required to be considered as an amicus curiae. That's where it drew that line. That's what the statute literally says. There is no argument about that. And I think that all of the results, the parade of horribles that Amicus has raised, again, may be debatable as a policy matter, but not one of them is an absurd exercise of Congress's responsibility. And as a result, we would urge the Court to reverse. Roberts. Thank you, counsel. Mr. Buchholz, this Court appointed you as an amicus curiae to brief and argue the case in support of the judgment below, and you have ably discharged that responsibility for which the Court is grateful. Thank you. The case is submitted.